IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
April 5, 2006 Session

**STATE OF TENNESSEE v. GARY LEE MARISE**

**Appeal by permission from the Court of Criminal Appeals**
**Circuit Court for Carroll County**
**No. 02CR-1964   Charles C. McGinley, Judge**

_____

**No. W2003-02434-SC-R11-CD - Filed on July 27, 2006**

_____

We granted permission to appeal in this case pursuant to Rule 11, Tennessee Rules of Appellate Procedure, to determine whether lay testimony of olfactory observations alone may support a conviction for possession of anhydrous ammonia with the intent to manufacture methamphetamine, a violation of Tennessee Code Annotated section 39-17-433(a).  We conclude that the burden of proving the nature and composition of anhydrous ammonia as it is defined in Tennessee Code Annotated section 43-11-303(a) cannot be met by adducing lay testimony of olfactory observations only.  Because the evidence adduced in the case under submission did not include any evidence of the chemical composition of the substance, we conclude that it is insufficient to sustain the conviction for unlawful possession of anhydrous ammonia and reverse the judgment of the Court of Criminal Appeals insofar as it affirmed this conviction.  Accordingly, we dismiss the defendant's conviction for possession of anhydrous ammonia with the intent to manufacture methamphetamine.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Reversed in Part**

ADOLPHO A. BIRCH, JR., J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J.; E. RILEY ANDERSON, JANICE M. HOLDER, and CORNELIA A. CLARK, JJ., joined.

Benjamin S. Dempsey, Huntingdon, Tennessee, for the appellant, Gary Lee Marise.

Paul G. Summers, Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; Robert Radford, District Attorney General; and Eleanor Cahill, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

1

I. Facts and Procedural History

On March 19, 2002, Deputy Michael Darnell of the Carroll County Sheriff's Department was on routine patrol when he observed the defendant, Gary Lee Marise, and a co-defendant, John Hamblen, standing at the rear of a car, which partially obstructed the roadway. Suspecting that the men might be dumping trash, he activated his emergency equipment and pulled in front of their vehicle. The men hastily shut the trunk and got in the car—the defendant in the driver's seat and Hamblen in the passenger's seat.

When he got closer to the window of the 1983 Plymouth, Darnell smelled alcohol and saw empty beer bottles lying in the floor of the car. He asked the two men for identification; Hamblen could not produce any. Darnell asked both men to step out of the vehicle and placed them inside his patrol car. Outside the vehicle, Darnell found a hand-rolled marijuana cigarette lying next to the passenger side of the car and a small jelly tin. Inside the jelly tin were two small packages containing a brownish powdery substance; Darnell suspected that the contents were methamphetamine.

Darnell also thought that he recognized the smell of anhydrous ammonia emitting from the trunk of the vehicle; he testified that he was familiar with the chemical's smell because he had worked on a farm, and anhydrous ammonia was a common farm chemical used to fertilize corn. It is also, he testified, a precursor ingredient to the "cold cook" method of producing methamphetamine. After smelling this chemical, Darnell asked the defendant for permission to search the vehicle. The defendant declined, stating that the vehicle did not belong to him.

Darnell obtained a search warrant for the vehicle and found, among other items, a metal canister inside the trunk which smelled of anhydrous ammonia. Darnell testified that this sort of container was commonly used to store anhydrous ammonia. He did not open the canister, he said, because of the caustic and volatile nature of anhydrous ammonia. In his opinion, however, the canister was full of anhydrous ammonia when it was seized. The substance has since evaporated. The contents of the canister have never been tested, nor has the canister been weighed. Darnell testified that the Sheriff's Department never sends anhydrous ammonia for testing because it is easily identifiable by its distinctive smell.

Deputy Andy Dickson, an investigator with the Carroll County Sheriff's Department in charge of the evidence room, testified that he was on the scene when the search warrant was executed and that he smelled the anhydrous ammonia emitting from the trunk of the car before the trunk was opened. He corroborated Darnell's testimony that the Sheriff's Department has never weighed anhydrous ammonia, nor have they sent anhydrous ammonia for laboratory testing.

The jury convicted the defendant of one count of felony possession of anhydrous ammonia with the intent to manufacture a controlled substance;[1] one count of misdemeanor possession of

---

[1]Tenn. Code Ann. § 39-17-433(a)(1) (2003).

methamphetamine;[2] one count of misdemeanor possession of marijuana;[3] and one count of misdemeanor possession of drug paraphernalia.[4] The defendant was sentenced as a Range I, standard offender to two years (with ninety days to serve) for possession of anhydrous ammonia, and concurrent sentences of eleven months and twenty-nine days (with thirty days to serve) for each of the misdemeanor possession counts.

The defendant's motion for a new trial was overruled, and he then appealed to the Court of Criminal Appeals, contending that the evidence was insufficient to support his conviction for possession of anhydrous ammonia with the intent to manufacture a controlled substance. The Court of Criminal Appeals affirmed the defendant's convictions, and he applied for permission to appeal to this Court.

## II. Standard of Review

Because the defendant challenges the sufficiency of the convicting evidence, "our standard of review is 'whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Jackson, 173 S.W.3d 401, 408 (Tenn. 2005) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

## III. Analysis

The defendant contends that in order to sustain a conviction for possession of anhydrous ammonia, the State must prove the chemical composition of the substance as is required by statute (82% nitrogen). The State contends, however, that such chemical proof is unnecessary and that the nature of the substance may be proven circumstantially through testimony of a trained narcotics officer that a particular substance smelled like anhydrous ammonia.

Tennessee Code Annotated section 39-17-433(a) (2003) makes it a crime for "a person to possess anhydrous ammonia, *as defined in* § 43-11-303(a), with the intent to: (1) Use such anhydrous ammonia in the manufacture of a controlled substance . . . ." (emphasis added). Anhydrous ammonia is defined in section 43-11-303(a) as containing 82% nitrogen.

Both parties cite to an unreported case, State v. Bynum, No. W2001-0011-CCA-R3-CD, 2001 WL 1690216 (Tenn. Crim. App. Dec. 31, 2001), as support for their respective contentions. Accordingly, we will address Bynum in the context of the case under submission.

In Bynum, deputies smelled what they believed to be anhydrous ammonia emitting from a

---

[2]Tenn. Code Ann. § 39-17-418(a) (2003).

[3]Tenn. Code Ann. § 39-17-418(a).

[4]Tenn. Code Ann. § 39-17-425(a)(1) (2003).

3

toolbox in the front seat of Bynum's truck. 2001 WL 1690216 at *1. Inside the box, they found a thermos, which a deputy opened, pouring out what he thought was anhydrous ammonia. Although no part of the substance was retained for chemical testing, the defendant admitted to possession of anhydrous ammonia. After he was convicted, he challenged the sufficiency of the convicting evidence on appeal. Id. The Court of Criminal Appeals found that "[w]hile the olfactory observations of the officers may not be enough, standing alone, to convict him under the statute," this evidence, when considered with the defendant's confession, was enough to support his conviction for possession of anhydrous ammonia. Id. at *2. Bynum is easily distinguishable from this case by the fact of the defendant's confession.

The Bynum Court did not, however, address the precise issue presented here—whether the olfactory observations of an officer, standing alone, are sufficient to support a conviction for possession of anhydrous ammonia. Thus, we are asked to decide an issue of first impression, albeit one of limited scope, because the legislature has since amended the statute by deleting the reference to anhydrous ammonia's chemical composition. Compare Tenn. Code Ann. § 39-17-433(b) (2005) (making it an offense to "promote methamphetamine manufacture" and making it admissible for an expert to establish whether a substance can be used to produce methamphetamine) with Tenn. Code Ann. § 39-17-433(a) (2003) (referring to the 82% nitrogen definition in § 43-11-303(a) in defining the offense). We must decide this case, however, based upon the statutes as they existed at the time of the defendant's alleged commission of the offense. The critical question, then, is whether the chemical composition of a substance must be proven to sustain a conviction for possession when the statute defining the offense includes a particular chemical composition.

The resolution of this issue rests on sound principles of statutory construction. When construing a statute, courts are to give effect to the ordinary meaning of the words used in the statute and presume that each word used was purposely chosen by the legislature to convey a specific meaning. State v. Denton, 149 S.W.3d 1, 17 (Tenn. 2004) (citing State v. Jennings, 130 S.W.3d 43, 46 (Tenn. 2004)). "Courts must 'presume that the legislature says in a statute what it means and means in a statute what it says there.'" Mooney v. Sneed, 30 S.W.3d 304, 307 (Tenn. 2000) (quoting BellSouth Telecomm., Inc. v. Greer, 972 S.W.2d 663, 673 (Tenn. Ct. App. 1997)).

Applying those principles to the case at hand, the 2003 version of Tennessee Code Annotated section 39-17-433(a) clearly references the agricultural definition of anhydrous ammonia, defining anhydrous ammonia as a substance composed of 82% nitrogen. See also Tenn. Code Ann. § 43-11-303(a). Presumably, had the legislature not intended that the State be required to prove that chemical composition beyond a reasonable doubt, then it would not have made reference to the composition in the statute criminalizing possession of anhydrous ammonia. This assumption is further bolstered by the fact that the legislature, when amending the statute to its current form, intentionally removed this reference, thereby removing the requirement that anhydrous ammonia's chemical composition be proven.

Because this Court's duty is to give effect to the legislative intent without unduly restricting or expanding the statute's intended scope, we must hold that the State was required, under the

4

statutes existing at the time of the defendant's alleged commission of the crime, to prove the chemical composition of anhydrous ammonia beyond a reasonable doubt. See State v. Davis, 173 S.W.3d 411, 413-14 (Tenn. 2005) (citing Jennings, 130 S.W.3d at 46)); see also Tenn. Code Ann. § 39-17-433(a). Because the State was required to prove the chemical composition of the anhydrous ammonia beyond a reasonable doubt, and because no chemical test was performed to determine the composition of the substance found, we hold that the evidence was insufficient to support the defendant's conviction.

## IV. Conclusion

Because we hold that the evidence was insufficient to sustain the defendant's conviction for possession of anhydrous ammonia, we reverse the decision of the Court of Criminal Appeals insofar as it upheld this conviction. Accordingly, we dismiss the defendant's conviction for that offense. The costs of this appeal are taxed to the State of Tennessee, for which execution may issue if necessary.

_____

ADOLPHO A. BIRCH, JR., JUSTICE

5