# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### November 12, 2015 Session

## STATE OF TENNESSEE v. ANGELA FAYE DANIEL

### Direct Appeal from the Circuit Court for Williamson County
#### No. II-CR018524     Deanna Bell Johnson, Judge

---

### No. M2015-01073-CCA-R9-CD – Filed March 29, 2016

---

In this interlocutory appeal, the appellant, State of Tennessee, appeals the Williamson County Circuit Court's order granting a motion to suppress evidence filed by the appellee, Angela Faye Daniel. The appellant claims that the trial court erroneously concluded that a police officer's failure to deliver a copy of a search warrant to the appellee was not a "clerical error" under Tennessee Code Annotated section 40-6-108, the Exclusionary Rule Reform Act. Based upon the oral arguments, the record, and the parties' briefs, we affirm the order of the trial court.

### Tenn. R. App. P. 9; Order of the Circuit Court is Affirmed.

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Leslie E. Price, Senior Counsel; Kim R. Helper, District Attorney General; and Carlin Hess, Assistant District Attorney General, for the appellant, State of Tennessee.

David H. Veile, Franklin, Tennessee, for the appellee, Angela Faye Daniel.

## OPINION

### Factual Background

The record reflects that on the night of June 6, 2014, Officer Megan Valentin of the Franklin Police Department initiated a traffic stop of a vehicle being driven by the appellee. During the stop, Officer Valentin noticed a smell of alcohol, and the appellee

stated that she had consumed two glasses of wine. However, the appellee refused to perform field sobriety tests or consent to blood alcohol testing. Consequently, Officer Valentin filed an affidavit and application for a search warrant to have the appellee's blood drawn. A magistrate issued the warrant, and Officer Valentin transported the appellee to the Williamson Medical Center for the blood draw.

In January 2015, the Williamson County Grand Jury indicted the appellee for driving under the influence (DUI) and DUI per se for the appellee's blood having an alcohol concentration of .08% or more. Subsequently, the appellee filed a motion to suppress the blood test results. Relevant to this appeal, the appellee argued that the trial court should suppress the evidence because Officer Valentin failed to provide her with a copy of the search warrant as required by Tennessee Rule of Criminal Procedure 41.

At the motion hearing, Officer Valentin testified that she arrested the appellee, obtained a search warrant from the Williamson County Magistrate, and executed the warrant. She said that she "always [gave] a copy to the defendant at that time" but that she did not specifically remember giving a copy of the warrant to the appellee. Officer Valentin acknowledged that it was possible she did not give a copy to the appellee "since [the appellee's] saying she doesn't have it." Officer Valentin stated, "I have no reason that I would not give it to her."

On cross-examination, Officer Valentin testified that she had obtained more than twenty search warrants for the seizure of blood. The State asked the officer, "[I]f you did not give Ms. Daniel a copy of the search warrant, . . . would you have done that on purpose?" The officer said no and that her failure to give the appellee a copy would have been a mistake.

The appellee testified that she received a pink copy of the Implied Consent Form that she signed on June 6, 2014. However, she did not receive a copy of the search warrant.

At the conclusion of the hearing, the appellee contended that the trial court should grant her motion to suppress pursuant to Tennessee Rule of Criminal Procedure 41(g)(6) because Officer Valentin failed to leave her a copy of the search warrant. The State argued that the appellee failed to show that she did not receive a copy and that, in any event, the Exclusionary Rule Reform Act (ERRA) "save[d]" the evidence because Officer Valentin's failure to leave a copy of the warrant was "an unintentional clerical omission" under the Rule. The appellee responded that the legislative intent of the Act was that an error related to Rule 41(g)(6), Tennessee Rules of Criminal Procedure, was not a "clerical error."

The trial court found by a preponderance of the evidence that the appellee did not receive a copy of the search warrant and stated that Rule 41(g)(6) was "pretty clear" in that the court had to grant the appellee's motion to suppress. Regarding the ERRA, the court concluded that the appellee's failure to receive a copy of the warrant was not a "clerical error" that saved the evidence from suppression.

## II. Analysis

On appeal, the State maintains that the appellee failed to establish that Officer Valentin did not provide her with a copy of the search warrant, and that, regardless, the officer's error qualified as a "good faith mistake or technical violation" under the ERRA. The State contends that the statutory definition of "good faith mistake or technical violation" as "a[n] unintentional clerical error or clerical omission made by a law enforcement officer . . . in the . . . filing and handling of copies . . . of a search warrant" demonstrates that the legislature intended that the Act apply to an officer's failure to deliver a copy of a warrant; otherwise, the language "handling of copies" has no meaning. The appellee argues that the trial court properly granted her motion to suppress pursuant to Rule 41(g)(6), Tennessee Rules of Criminal Procedure; that the ERRA did not save the evidence from suppression because the officer's error was not "[a]n unintentional clerical error or clerical omission"; and that the ERRA is unconstitutional because it violates the separation of powers doctrine. We conclude that the trial court properly granted the motion to suppress.

In reviewing a trial court's determinations regarding a suppression hearing, "[q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, "a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." Id. Nevertheless, appellate courts will review the trial court's application of law to the facts purely de novo. See State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). Furthermore, the prevailing party is "entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence." Odom, 928 S.W.2d at 23.

Our supreme court has explained the purposes served by warrants as follows:

> Warrants serve to provide law enforcement officials and persons subject to such warrants with written evidence that the search has been authorized by a judicial officer upon a showing of probable cause. Warrants also serve to define and to limit the duration and scope of authority of law

> enforcement officials by delineating the specific date and
> time of issuance of the warrant and by describing with
> particularity the premises to be searched and the items subject
> to seizure.

State v. Davis, 185 S.W.3d 338, 345 (Tenn. 2006). Tennessee Rule of Criminal Procedure 41(d) provides that a magistrate shall prepare an original and two exact copies of a search warrant and that one of the copies "shall be left with the person or persons on whom the search warrant is served." Leaving a copy of the warrant with the person on whom the warrant is served is reiterated in 41(e)(4), which states that the officer who executes a search warrant "shall: (A) give to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt for the property; or (B) shall leave the copy and receipt at a place from which the property was taken." Tenn. R. Crim. P. 41(e)(4). "The purpose of providing notice to the owner of seized property is to notify the owner of the source of the seizure so that the owner can pursue available remedies for its return." State v. Roy Len Rogers, No. E2011-02529-CCA-R3-CD, 2013 WL 5371987, at *18 (Tenn. Crim. App. at Knoxville, Sept. 23, 2013) (citing City of West Covina v. Perkins, 525 U.S. 234, 240 (1999)). Rule 41(g)(6) provides that an officer's "failure-where possible-[to] leave a copy of the warrant with the person or persons on whom the search warrant was served" requires exclusion of evidence seized during the warrant's execution. Tenn. R. Crim. P. 41(g)(6).

As to the appellant's claim that the appellee failed to show she did not receive a copy of the search warrant, the trial court found that the appellee did not receive a copy. Nothing preponderates against the finding of the trial court. Therefore, we turn to whether the ERRA saved the evidence from suppression.

The ERRA, enacted on July 1, 2011, "provides a statutory good faith exception for the failure to comply with technical statutory and procedural rules regarding the issuance of warrants." State v. Lemaricus Devall Davidson, No. E2013-00394-CCA-R3-DD, 2015 WL 1087126, at *14 n.8 (Tenn. Crim. App. at Knoxville, Mar. 10, 2015). Specifically, the Act states as follows:

> Notwithstanding any law to the contrary, any evidence that is
> seized as a result of executing a search warrant issued
> pursuant to this part or pursuant to Tennessee Rules of
> Criminal Procedure Rule 41 that is otherwise admissible in a
> criminal proceeding and not in violation of the constitution of
> the United States or Tennessee shall not be suppressed as a
> result of any violation of this part or any violation of the
> Tennessee Rules of Criminal Procedure Rule 41 if the court

determines that such violation was a result of a good faith mistake or technical violation made by a law enforcement officer, court official, or the issuing magistrate as defined in subsection (c).

Tenn. Code Ann. § 40-6-108(a). Relevant to this appeal, a "'good faith mistake or technical violation'" is defined as "[a]n unintentional clerical error or clerical omission made by a law enforcement officer, court official or issuing magistrate in the form, preparation, issuance, filing and handling of copies, or return and inventory of a search warrant[.]" Tenn. Code Ann. § 40-6-108(c)(1).

In order to determine whether Officer Valentin's failure to leave a copy of the warrant with the appellee qualified as a good faith mistake or technical violation, we must determine what is meant by "[a]n unintentional clerical error or clerical omission." When reviewing issues of statutory construction, we conduct a de novo review of the trial court's rulings without any presumption of correctness. See Carter v. Bell, 279 S.W.3d 560, 564 (Tenn. 2009). "When statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use . . . without reference to the broader statutory intent, legislative history, or other sources." Id. Our goal is to "ascertain and give effect to [the] legislative intent without broadening the statute beyond its intended scope." Id. Additionally, "[w]e must presume that the General Assembly is aware of prior enactments and decisions of the courts when enacting legislation." Id. Moreover, we presume that the legislature says what it means and means what it says. State v. Marise, 197 S.W.3d 762, 766 (Tenn. 2006). Our supreme court recently demonstrated just how strictly we are to presume that the legislature says what it means and means what it says when it held that "our General Assembly has made a policy decision that all motorists—including legislators, law enforcement officers, prosecutors, and judges—who briefly cross a center lane line on Tennessee roadways are subject to a traffic stop for committing a misdemeanor." State v. William Whitlow Davis, Jr., ___ S.W.3d ___, No. E2013-02073-SC-R11-CD, 2016 WL 537069, at *6 (Tenn. Feb. 11, 2016).

Prior to the ERRA's enactment, a "good faith mistake or technical violation" was originally defined in the House and Senate bills as "[a]n unintentional error made in the form, preparation, issuance, service, execution, filing and handling of copies, or return and inventory of a search warrant[.]" H.B. 401, TN B. Summ., 2011 Reg. Sess., 107th General Assembly (Feb. 8, 2011); S.B. 559, TN B. Summ., 2011 Reg. Sess., 107th General Assembly (Feb. 9, 2011). Subsequently, the legislature adopted two amendments to the definition. The first amended the definition to "[a]n unintentional clerical error or omission made by a law enforcement officer, court official or issuing magistrate in the form, preparation, issuance, service, execution, filing and handling of

copies, or return and inventory of a search warrant[.]"  H.B. 401, TN H.R. Jour., 2011 Reg. Sess. No. 30, 107th General Assembly (May 4, 2011) (emphasis added).  The second further amended the definition from "clerical error or omission" to "clerical error or <u>clerical</u> omission."  H.B. 401, TN H.R. Jour., 2011 Reg. Sess. No. 30, 107th General Assembly (May 4, 2011) (e mphasis added).  The House and Senate enacted the ERRA as amended.  H.B. 401, S.B. 559, TN S. Jour., 2011 Reg. Sess. No. 31, 107th General Assembly (May 5, 2011).

Obviously, the word "clerical" was very significant to the legislature.  Black's Law Dictionary does not define "clerical" or "clerical omission."  However, it defines "clerical error" as:

> An error resulting from a minor mistake or inadvertence, esp. in writing or copying something on the record, and not from judicial reasoning or determination.
>
> •    Among the boundless examples of clerical errors are omitting an appendix from a document; typing an incorrect number; mistranscribing a word; and failing to log a call.  A court can correct a clerical error at any time, even after judgment has been entered.

<u>Black's Law Dictionary</u> 563 (7th ed. 1999).

During discussions of the proposed ERRA in the Senate Judiciary Committee on April 27, 2011, Assistant District Attorney General John Zimmerman explained that the definition of "good faith mistake or technical violation" addressed errors on the warrant that were made by the judge, the magistrate, or the clerk under Tennessee Rule of Criminal Procedure 41(g)(5)[1] and errors resulting from a "technical violation of Rule 41" made by an officer such as when the officer who obtained the warrant was not the officer who ultimately served the warrant.[2]  General Zimmerman stated, "Why should a defendant care if the chief of police serves a search warrant when it was issued to one of his detectives?  There's no prejudice or harm to the defendant."  Senator Mae Beavers asked General Zimmerman to explain what was meant by "omission" in the definition,

---

[1] Rule 41(g)(5), Tennessee Rules of Criminal Procedure, provides that a trial court shall grant a motion to suppress evidence if the magistrate failed to "(A) make an original and two copies of the search warrant; or (B) did not endorse on the warrant the date and time of issuance and the name of the officer to whom the warrant was issued."

[2] Rule 41(e)(1), Tennessee Rules of Criminal Procedure, provides, "The search warrant may only be executed by the law enforcement officer, or one of them, to whom it is directed.  Other persons may aid such officer at the officer's request, but the officer must be present and participate in the execution."

and he stated that the word referred to a copy of the warrant that failed to be an exact copy of the original, such as when a judge failed to write the year on the copy. Senator Beavers then asked, "So effectively you mean 'clerical omission?'" General Zimmerman answered, "Yes, ma'am. That's what [has] been interpreted by the courts when they've struck down these search warrants."

Turning to the instant case, we note that the appellee contends that the trial court did not make a finding that the officer's failure to provide her with a copy of the warrant was "unintentional." We disagree with the appellee. Officer Valentin testified that if she failed to leave a copy of the warrant with the appellee, she did so unintentionally. In determining that the officer failed to leave a copy, the trial court found that the officer testified truthfully and thanked her for her honesty. Thus, the trial court implicitly found that Officer Valentin's failure to give a copy of the search warrant to the appellee was unintentional.

As to the appellant's claim that the trial court erred by finding that the officer's failure to leave a copy of the warrant was a clerical error or clerical omission, we disagree with the State. The legislature carefully worded the definition of "good faith mistake or technical violation" to include only those errors and omissions that were "clerical." The legal definition of a "clerical error" refers to a mistake in a writing such as an unintentional typographical error or an omission in the writing. Moreover, nothing indicates that the legislature intended for the ERRA to permit the admission of evidence that was obtained when the State completely failed to deliver a copy of the search warrant to a defendant. Although the State contends that the reference to the "handling" of copies in the definition of "good faith mistake or technical violation" demonstrates that the legislature intended for the ERRA to apply to an officer's failure to deliver a copy of a warrant, the legislature could have specifically included the "delivering" of copies in the definition, had it been so inclined. Therefore, we conclude that the trial court properly granted the appellee's motion to suppress. We also conclude that we need not address the constitutionality of Tennessee Code Annotated section 40-6-108 because, irrespective of the statute's constitutionality, the trial court properly suppressed the evidence.

### III. Conclusion

Based upon the oral arguments, the record, and the parties' briefs, we affirm the order of the trial court.

_____
NORMA MCGEE OGLE, JUDGE