## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
### AT KNOXVILLE
Assigned on Briefs December 20, 2016

## JOSH L. BOWMAN v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 104880   Steven Wayne Sword, Judge**

_____

### No. E2016-01028-CCA-R3-PC
_____

The Petitioner, Josh L. Bowman, was convicted by a jury of three counts of first degree felony murder, one count of especially aggravated kidnapping, one count of especially aggravated robbery, two counts of aggravated burglary, and one count of employing a firearm during the commission of a dangerous felony.  After the verdict, the Petitioner pled guilty to one count of employing a firearm during the commission of a dangerous felony when he had previously been convicted of a felony.  The trial court merged the murder convictions, merged the burglary convictions, and merged the firearms convictions.  This court on appeal reversed the especially aggravated kidnapping conviction and remanded for a new trial, affirming all other judgments. *See State v. Josh L. Bowman*, No. E2012-00923-CCA-R3-CD, 2013 WL 4680402, at *3 (Tenn. Crim. App. Aug. 29, 2013), *overruled in part by State v. Teats*, 468 S.W.3d 495 (Tenn. 2015).  The Petitioner filed a timely post-conviction petition, alleging that his trial counsel was deficient in allowing him to enter a guilty plea to the firearms offense and deficient in failing to object to the racial composition of the jury venire.  The post-conviction court granted relief on the firearms conviction, finding that the Petitioner did not have a qualifying prior "dangerous felony" and dismissing the charge.  The post-conviction court found that the Petitioner could not show deficiency or prejudice on the jury issue. Both parties filed notices of appeal in this court.  The State asserts that the post-conviction court misinterpreted Tennessee Code Annotated section 39-17-1324 (2008) in granting relief and argues that the prior felony need not be a dangerous felony according to statute.  The Petitioner asserts that he is entitled to relief from all his convictions based on the jury composition.  After a thorough review of the record, we affirm the post-conviction court's judgment.  We remand for the post-conviction court to enter judgment on the merged conviction which survives the dismissal of the firearms offense.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed;**
**Case Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Herbert H. Slatery III, Attorney General and Reporter; Lacy Wilber, Assistant Attorney General; Charme Allen, District Attorney General; and Ta Kisha M. Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

Leslie M. Jeffress, Knoxville, Tennessee, for the appellee, Josh L. Bowman.

**OPINION**

The Petitioner's convictions are the result of a home invasion committed on May 2, 2009, during which the Petitioner and his co-defendants planned to rob the victims, who were the beneficiaries of a life insurance policy. *Josh L. Bowman*, 2013 WL 4680402, at *3. The Petitioner and one co-defendant entered the victims' home with guns in order to obtain a safe. *Id.* at *4. Both of the victims apparently attempted to use guns to defend themselves. *Id.* The surviving victim testified that she struggled with one of the Petitioner's co-defendants while she heard the other attacker shoot her husband. *Id.* The offenders took the safe, and the injured victim ultimately died from his wound. *Id.* at *5. The Petitioner gave a statement acknowledging his role in the crimes, and the deceased victim's blood was discovered on a pair of boots found in the trunk of the Petitioner's car. *Id.* at *3, 5.

After the jury verdict, the Petitioner pled guilty to the offense which the post-conviction court dismissed: employing a firearm during the commission of a dangerous felony when the Petitioner "had a prior felony conviction." *Id.* at *1. The trial court merged various offenses, including the two convictions for employing a firearm during the commission of a dangerous felony, and the Petitioner received an effective sentence of life plus sixty years in prison. *Id.*

On appeal, in light of the then-recent opinion in *State v. White*, 362 S.W.3d 559 (Tenn. 2012), this court reversed the especially aggravated kidnapping conviction but affirmed the remaining convictions. *Josh L. Bowman*, 2013 WL 4680402, at *16. According to the findings of the post-conviction court, the Petitioner on remand agreed to plead guilty to especially aggravated kidnapping in exchange for a fifteen-year sentence to be served concurrently with his murder conviction. We note that the Tennessee Supreme Court has since indicated that this court erred in the Petitioner's direct appeal when it reversed the conviction, because the kidnapping offense was not committed against the victim of the underlying felony and the jury did not need to be instructed pursuant to *White*. *Teats*, 468 S.W.3d at 503.

The Petitioner filed a timely post-conviction petition, amended by counsel, challenging his guilty plea to the conviction for employment of a firearm during the commission of a dangerous felony after having been previously convicted of a felony. The Petitioner's challenge is based in part on the indictment, which charged him as follows:

> And the Grand Jurors aforesaid, upon their oaths aforesaid, do further present that JOSH L. BOWMAN, heretofore, to-wit: On or about the ____ day of May, 2009, in the State and County aforesaid, did unlawfully and knowingly employ a firearm during the commission of a dangerous felony, and that said JOSH L. BOWMAN, ALIAS has heretofore been convicted of a dangerous felony as follows:
>
> 1. That in Case No. 76454 count 1, on the 6th day of February, 2003, in the Criminal Court for Knox County, TN, the said JOSH L. BOWMAN, ALIAS, was convicted of the offense of Aggravated Robbery,
>
> 2. That in Case No. 76454 count 2, on the 6th day of February, 2003, in the Criminal Court for Knox County, TN, the said JOSH L. BOWMAN, ALIAS, was convicted of the offense of Aggravated Robbery,
>
> 3. That in Case No. 76454 count 3, on the 6th day of February, 2003, in the Criminal Court for Knox County, TN, the said JOSH L. BOWMAN, ALIAS, was convicted of the offense of Aggravated Robbery,
>
> 4, That in Case No. 76454 count 4, on the 6th day of February, 2003, in the Criminal Court for Knox County, TN, the said JOSH L. BOWMAN, ALIAS, was convicted of the offense of Aggravated Robbery,
>
> 5. That in Case No. 76454 count 5, on the 6th day of February, 2003, in the Criminal Court for Knox County, TN, the said JOSH L. BOWMAN, ALIAS, was convicted of the offense of Aggravated Robbery,
>
> in violation of T.C.A. 39-17-1324, and against the peace and dignity of the State of Tennessee.

The Petitioner asserts that aggravated robbery is not a "dangerous felony" under the statute as charged in the indictment and that his counsel was accordingly deficient for allowing him to plead guilty. The Petitioner also asserts that his trial counsel was deficient in failing to object to the racial composition of the jury venire. The petition

additionally raised a challenge to trial counsel's investigation into the Petitioner's mental health, which is not at issue on appeal.

The Petitioner testified at the post-conviction hearing that the venire included only one African American person and that this prospective juror was excused, leaving an all-white jury. He testified that Knox County used a list provided by the Department of Safety that included those who had driver's licenses and other identification cards. The Petitioner stated that jurors were picked randomly from this list and that no effort was made to select for gender or race and that the venire accordingly did not represent a cross-section of the community. On cross-examination, he acknowledged that he never saw the larger venire, only the prospective jurors who were brought into the courtroom prior to his trial.

The Petitioner testified that he had prior convictions for aggravated robbery and that aggravated robbery was not a dangerous felony under statute. His trial counsel did not attempt to dismiss the conviction in the trial court or on appeal. The Petitioner agreed that he pled guilty after having been convicted of the other offenses at trial.

Jolene Kamper, the jury coordinator for Knox County, testified that sending out a call to jury duty was an automated process which used the Department of Safety database and randomly selected jurors from county residents who have a driver's license or a State-issued identification card. She testified that there was no way to determine the race of those selected. She also testified that the court would generally ask for a little over one hundred notices to be sent for jury selection purposes.

The Petitioner's trial counsel testified that he had been practicing criminal law for eighteen years and had handled approximately two dozen homicide cases. He testified that he did not raise an issue regarding the jury venire or the weapons offense which the Petitioner was challenging. Trial counsel testified that he wanted to avoid "the bifurcated section of the trial at which the state would be allowed to put on his priors without him testifying." Trial counsel did not recall any discussion regarding the language in the indictment stating that the prior felonies were dangerous felonies.

Trial counsel agreed that he had concerns about the jury venire and testified that he felt a venire was rarely truly a racial cross-section of the community. Although he felt that the actual venire did not reflect the community's racial composition, trial counsel did not believe he could raise a successful challenge on this basis. He testified that given the strength of the State's proof, he did not think that the racial composition of the jury was determinative in the Petitioner's case. He testified that there were "a couple" of minorities in the panel but that the panel did not represent a cross-section of the community.

The Petitioner argued that his trial counsel had provided him the ineffective assistance of counsel when he allowed the Petitioner to plead guilty despite the fact that his prior felonies were not statutorily defined as dangerous felonies. He also argued that the jury selection system should require that race be considered in order to effect a venire that reflects the racial composition of the county. The State acknowledged that the indictment referred to a "prior dangerous felony" but argued that the statute did not require the prior felony to be dangerous.

The post-conviction court granted relief on the challenge to the firearms offense, finding that the "inclusion of aggravated robbery as 'prior felony conviction' was contrary to the statute." The post-conviction court found that trial counsel performed deficiently in advising the Petitioner to plead guilty because the proceedings would have been bifurcated and because the felonies were not qualifying due to their exclusion from the statutory list of "dangerous felonies." The court concluded that there was a reasonable probability that the charge would have been dismissed if challenged or that the jury would have found the Petitioner not guilty. The post-conviction court set aside the guilty plea and dismissed the charge. We note that the post-conviction court did not address how the conviction for employment of a weapon in the commission of a dangerous felony which merged with the challenged conviction would survive the dismissal.

The post-conviction court credited the Petitioner's testimony that all of the members of the jury were white. Nevertheless, the post-conviction court found that there was "no proof that the entire panel only included one African American" and that trial counsel believed there were "a couple of African Americans in the venire." The post-conviction court denied relief on the jury issue on both deficiency and prejudice, observing that there was no evidence that there was a disparity in the number of African Americans in the jury pool compared to the community and that the evidence at the post-conviction hearing had established that there was no systematic exclusion of any racial group. The post-conviction court also found that trial counsel was not deficient in investigation. The State appeals the dismissal of the firearms conviction, and the Petitioner appeals the denial of relief on the jury issue.

**ANALYSIS**

The Petitioner alleges he received the ineffective assistance of counsel when he pled guilty to one count of employing a weapon during the commission of a dangerous felony after having been previously convicted of a dangerous felony and when his counsel did not object to the racial composition of the jury.

A petitioner is entitled to post-conviction relief if his conviction or sentence is void or voidable due to the abridgment of any constitutional right. T.C.A. § 40-30-103. The findings of fact made by a post-conviction court are conclusive on appeal unless the evidence preponderates against them. *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010). This court may not substitute its own inferences for those drawn by the post-conviction court, and questions concerning the credibility of witnesses, the weight and value of the evidence, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). A claim of ineffective assistance of counsel raises a mixed question of law and fact which this court reviews de novo. *Fields v. State*, 40 S.W.3d 450, 457-58 (Tenn. 2001). The trial court's legal determinations are reviewed under a purely de novo standard with no presumption of correctness. *Id.* at 457.

The petitioner bears the burden of proving the allegations of fact in the petition by clear and convincing evidence. T.C.A. § 40-30-110(f); *Ward*, 315 S.W.3d at 465. "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)).

Both the Sixth Amendment to the United States Constitution and Article I, section 9 of the Tennessee Constitution guarantee the accused the right to counsel. This right has been defined as the right to the reasonably effective assistance of counsel, or assistance "'within the range of competence demanded of attorneys in criminal cases.'" *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006) (quoting *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999)). The overall standard of effectiveness is "'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)).

In order to establish that he received the ineffective assistance of counsel, a petitioner must show both that his lawyer's performance was deficient and that the deficiency resulted in prejudice. *Pylant v. State*, 263 S.W.3d 854, 868 (Tenn. 2008). Deficiency can be shown if the petitioner demonstrates that his attorney's services were below an objective standard of reasonableness under prevailing professional norms. *Id.* A petitioner must demonstrate deficiency by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (quoting *Strickland*, 466 U.S. at 687). A reviewing court indulges "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. There is a presumption that counsel's acts might be "sound trial

strategy," and strategic decisions, when made after a thorough investigation, are "virtually unchallengeable." *Felts*, 354 S.W.3d at 277 (quoting *Strickland*, 466 U.S. at 689-90).

To prevail on the prejudice prong, the petitioner "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (quoting *Vaughn*, 202 S.W.3d at 116). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* In order to show prejudice in the context of a guilty plea, the petitioner must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." *Grindstaff*, 297 S.W.3d at 217 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). A claim may be denied for failure to prove either prong, and a court need not address both if the petitioner has failed to establish either deficiency or prejudice. *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

## I. Qualifying Prior Felonies

The post-conviction court granted relief based on the reasoning that Tennessee Code Annotated section 39-17-1324 requires the prior felonies to be dangerous felonies and that the Petitioner's prior convictions for aggravated robbery were not dangerous felonies according to the statute. The post-conviction court accordingly concluded that trial counsel was deficient in his representation during the guilty plea to this offense. The State argues that the statute requires only a "prior felony conviction" and that the qualifying felonies need not be dangerous felonies. We conclude, based on the statutory language and the history of the legislation, that a "prior felony conviction," as the term is used in subsections (f), (g)(2), and (h)(2), must be for a dangerous felony under the statute, and that accordingly the Petitioner's convictions for aggravated robbery were not qualifying prior felonies.

Issues of statutory construction present questions of law that this court reviews de novo without a presumption of correctness. *State v. Edmonsond*, 231 S.W.3d 925, 927 (Tenn. 2007). This court should give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope. *State v. Sherman*, 266 S.W.3d 395, 401 (Tenn. 2008). "Penal statutes are to be construed giving fair import of their terms in a way which promotes justice and effectuates the objectives of the criminal code." *Id.* (citing Tenn. Code Ann. § 39-11-104). "Every word in a statute 'is presumed to have meaning and purpose, and should be given full effect if so doing does not violate the obvious intention of the Legislature.'" *Waters v. Farr*, 291 S.W.3d 873, 881 (Tenn. 2009) (quoting *In re C.K.G.,* 173 S.W.3d 714, 722 (Tenn. 2005)). When the language of a statute is clear and unambiguous, this court "must apply

its plain meaning in its normal and accepted use, without a forced interpretation that would extend the meaning of the language and, in that instance, we enforce the language without reference to the broader statutory intent, legislative history, or other sources." *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009). When a statute is ambiguous, the reviewing court may look to the statutory scheme, the history of the legislation and other sources to discern the meaning of the legislation. *Waters*, 291 S.W.3d at 881.

Tennessee Code Annotated section 39-17-1324(b) (2008) makes it an offense to employ a firearm during the commission of, attempt to commit, or flight or escape from the commission of or attempt to commit a "dangerous felony." The statute contains a definition of "dangerous felony" as it is used in the section. T.C.A. § 39-17-1324(i)(1). The definition of "dangerous felony" given in subsection (i)(1) is a list of offenses and does not include aggravated robbery. *Id.*

The Petitioner was convicted under subsection (h)(2), which states that "[a] violation of subsection (b) is a Class C felony, punishable by a mandatory minimum ten-year sentence to the department of correction, if the defendant, at the time of the offense, had a prior felony conviction." T.C.A. § 39-17-1324(h)(2). The Petitioner urged that this subsection must be read in conjunction with subsection (i)(2), which defines a "prior conviction." Under that section,

> (A) "Prior conviction" means that the person serves and is released or discharged from, or is serving, a separate period of incarceration or supervision for the commission of a dangerous felony prior to or at the time of committing a dangerous felony on or after January 1, 2008;

> (B) "Prior conviction" includes convictions under the laws of any other state, government or country that, if committed in this state, would constitute a dangerous felony. If a felony offense in a jurisdiction other than Tennessee is not identified as a dangerous felony in this state, it shall be considered a prior conviction if the elements of the felony are the same as the elements for a dangerous felony.

T.C.A. § 39-17-1324(i)(2). We note that in the version of the statute in effect at the time of the Petitioner's convictions, the phrase "prior conviction" appears only in the definition of a "prior conviction." *See* T.C.A. § 39-17-1324. Otherwise, the statute uses the phrase "prior felony conviction." T.C.A. § 39-17-1324(f), (g)(2), (h)(2).

The statute was amended in 2012 and currently *does* contain the phrase "prior conviction" in mandating separate penalties defined under subsection (j):

(j) Any person convicted under this section who has a *prior conviction* under this section shall be sentenced to incarceration with the department of correction for not less than fifteen (15) years. A person sentenced under this subsection (j) shall serve one hundred percent (100%) of the sentence imposed.

*See* T.C.A. § 39-17-1324(j) (emphasis added).  Because the statute is ambiguous, we look to the legislative history of the statute and to the statutory scheme to determine whether the phrase "prior conviction" is actually an attempt to define "prior felony conviction" as it is used in the statute.

The original bill in the House and Senate was amended three times.  *See* Tennessee Senate Journal, 2007 Reg. Sess. No. 49, S.B. 1967; Tennessee House Journal, 2007 Reg. Sess. No. 49, H.B. 1835.  The first Amendment, which was substituted for the bill in the early stages of the legislation, required a mandatory minimum sentence of ten years for employing a firearm in the commission of a dangerous felony if the defendant had "a prior felony conviction"; this is the language that ultimately survived in subsection (h)(2) of the statute.  However, Amendment No. 1 differs from the final law in the definition provided in subsection (i)(2):

> "Prior felony conviction" mean[s], for purposes of this section, that the person serves and is released or discharged from a separate period of incarceration or supervision for the commission of a felony offense prior to committing a dangerous felony as defined in subdivision (1).

> "Prior felony conviction" includes convictions under the laws of any other state, government or country which, if committed in this state, would constitute a felony offense. If a felony from a jurisdiction other than Tennessee is not a named felony offense in this state, it shall be considered a prior conviction if the elements of the felony are the same as the elements for an offense classified as a felony offense in this state.

Accordingly, the bill was initially drafted so that the qualifying prior felony was not required to be a dangerous felony under the statute and so that the definition in subsection (i) was for a "[p]rior felony conviction" rather than for a "[p]rior conviction." Amendments No. 2 and 3, however, while retaining the phrase "prior felony conviction," in subsections (f), (g), and (h), changed the statutory definition from a "[p]rior felony conviction" in subsection (i) of Amendment No. 1 to a "[p]rior conviction," the language which ultimately survives in subsection (i) of the statute:

(2) "Prior conviction" means, for purposes of this section, that the person serves and is released or discharged from, or is serving, a separate period of incarceration or supervision for the commission of a dangerous felony prior to or at the time of committing dangerous felony on or after January 1, 2008.

(3) "Prior conviction" includes convictions under the laws of any other state, government or country which, if committed in this state, would constitute a dangerous felony. If a felony offense in a jurisdiction other than Tennessee is not identified as a dangerous felony in this state, it shall be considered a prior conviction if the elements of the felony are the same as the elements for a dangerous felony.

This definition in Amendments No. 2 and 3 also restricts "prior convictions" to previous convictions "for the commission of a dangerous felony." *Id.*

It would appear that the Legislature attempted to revise the bill to require the prior conviction to be for a dangerous felony but neglected to change the language in subsections (f), (g)(2), and (h)(2) to conform with the revisions. Amendments 2 and 3, which changed the defined phrase from "prior felony conviction" to "prior conviction" and which changed the definition from a separate period of incarceration for "a felony offense" to a separate period of incarceration "for the commission of a dangerous felony," were introduced immediately prior to the passage of the bills in the House and Senate on June 11, 2007. We have surveyed the legislative history of the bill, and there is no record of a discussion of the changes. Senator Norris, the sponsor in the Senate, stated that Amendment 3 originated in the Finance, Ways, and Means Committee, and the history of the bill reveals that it carried a large fiscal note which was successfully reduced in the early stages of the legislation by limiting the underlying felonies to "dangerous felonies."[1] *See* S.B. 1967, Senate Session, 105th Congress (June 11, 2007) (statement of Sen. Mark Norris).

We reiterate that every word of a statute is presumed to have meaning and purpose. *Waters*, 291 S.W.3d at 881. It would be nonsensical to include in a statute the definition of a term which had no application to a given statute. We also reiterate that in the version of the statute in effect at the time of the Petitioner's convictions, the only place the phrase "prior conviction" appears is in the definition of that term. Furthermore,

---

[1] According to the sponsor of the bill in the House of Representatives, the legislation was aimed at the incapacitation of violent criminals who would "shoot you between the eyes and sit on your body and eat a cheeseburger." Hearing on H.B. 1835, House Finance, Ways, and Means Committee, 105th Congress (June 11, 2007) (statement of Rep. John J. DeBerry, Jr.).

subsection (f) directs the trial court to hold a bifurcated hearing if the defendant is charged with having committed the crime at a time when the defendant had a "prior felony offense." T.C.A. § 39-17-1324(f) (2008). Subsection (f) directs the trier of fact to determine if the defendant has "a *qualifying* prior felony conviction." *Id.* (emphasis added). Both the fact that the statute contains a definition for a term that is not used and the fact that subsection (f) directs the trier of fact to determine if the prior felony conviction was a "qualifying" felony lead to the inference that the prior conviction must be for a dangerous felony. Therefore, we conclude, based on the statutory language and the history of the Amendments to the bill, that the Legislature intended that "prior conviction" would be the statutory definition of "prior felony conviction," as the term is used in subsections (f), (g)(2), and (h)(2).

Because a "prior conviction" under the statute is limited to a prior conviction for a dangerous felony, we agree with the post-conviction court's conclusion that aggravated robbery, which is not a dangerous felony under the statute, cannot be a "qualifying prior felony." T.C.A. § 39-17-1324(f). This conclusion is buttressed by the fact that the pattern jury instructions currently instruct the jury "to determine whether or not the defendant has a prior conviction for (list an offense in T.C.A. § 39-17-1324(i)(1))." 7 Tenn. Practice Pattern Jury Instructions - Crim. 36.06(d).

The State cites to *State v. Roy Demond Duncan*, in which the trial court failed to submit the issue of a qualifying prior felony to the jury. No. W2012-00834-CCA-R3-CD, 2013 WL 2490551, at *7 (Tenn. Crim. App. June 7, 2013). This court remanded for the determination of whether the defendant's prior convictions for "aggravated burglary and robbery" would qualify the defendant for the increased sentencing. *Id.* The State suggests that the remand in that case shows that the qualifying felony need not be a dangerous felony according to statute. However, we observe that the court was not addressing this issue and that, contrary to the State's assertion, aggravated burglary is a statutory dangerous felony. *See id.*; T.C.A. § 39-17-1324(i)(1)(G). Accordingly, we find little guidance in *Roy Demond Duncan* on the issue before us.

On the other hand, this court has previously concluded that "[t]he statute limits eligible prior convictions to those 'for the commission of a dangerous felony.'"[2] *State v. Travis Tate*, No. W2014-02102-CCA-R3-CD, 2016 WL 7664764, at *11 (Tenn. Crim. App. May 31, 2016); *see also State v. Myron McNeal*, No. W2010-01130-CCA-R3-CD, 2012 WL 543054, at *4 n.1 (Tenn. Crim. App. Feb. 16, 2012) ("The jury, in a bifurcated

---

[2] We note here that the Petitioner's citation to *State v. Casey Colbert* is inapt because the court in *Casey Colbert* reversed a conviction based on the fact that the underlying felony, not a prior felony, did not meet the statutory definition of "dangerous felony." 2013 WL 3128698, No. W2012-00099-CCA-R3-CD, at *16, *perm. app. denied* (Tenn. Nov. 13, 2013) (docket number corrected).

- 11 -

proceeding, found the appellant guilty of having a prior conviction for a dangerous felony, making the statutory minimum sentence for the offense ten years at one hundred percent in the Tennessee Department of Correction.").

Accordingly, the Petitioner's underlying felonies of aggravated robbery are not "qualifying prior felon[ies]" according to statute because they are not listed within the statutory definition of "dangerous felonies." T.C.A. § 39-17-1324(f), (i). The State's only argument on appeal is that the statute does not require the qualifying prior felonies to be dangerous felonies; the State does not otherwise contest the post-conviction court's findings regarding deficiency and prejudice. We conclude that trial counsel's advice to the Petitioner to plead guilty when he did not have the requisite qualifying prior felonies was deficient and prejudicial. Accordingly, we affirm the post-conviction court's dismissal of the charge.

We note that the post-conviction court did not address how the conviction for employment of a firearm in the commission of a dangerous felony, which merged together with the conviction which has been dismissed, would survive the dismissal of the charge. Taking judicial notice of the record from the direct appeal, we also observe that, while the conviction for the employment of a firearm in the commission of a dangerous felony under subsection (h)(1) should have merged into the conviction for the employment of a firearm during the commission of a dangerous felony after having been previously convicted of a dangerous felony under subsection (h)(2), the judgment forms indicate that the conviction challenged here was in fact merged into the lesser conviction. The Petitioner was a career offender at the time he was convicted of the offenses. Accordingly, by statute, he should have been sentenced to a fifteen-year sentence with a six-year mandatory minimum period of incarceration for the conviction for employing a firearm during the commission of a dangerous felony. T.C.A. §§ 39-17-1324(h)(2); 40-35-112(c)(3); 40-35-108(c). We remand for the post-conviction court to correct the judgment forms to reflect the judgment and sentence for the surviving conviction.

**B. Jury Venire**

The Petitioner appeals the post-conviction court's denial of relief based on his claim that trial counsel was ineffective in failing to object to the composition of the jury. We note that both parties filed notices of appeal. The State's notice of appeal was filed four days prior to the Petitioner's, and the State was designated as the appellant. *See* Tenn. R. App. P. 13(a) ("Except as otherwise provided in Rule 3(e), any question of law may be brought up for review and relief by any party. Cross-appeals, separate appeals, and separate applications for permission to appeal are not required."). The State's brief addresses only the issue regarding the qualifying prior felonies. The Petitioner's brief was filed after that of the State and argued that the post-conviction court erred in denying

relief on the jury issue, and the State submitted no reply to address the issue regarding jury composition that was raised by the Petitioner.

The Petitioner argues that his trial counsel provided deficient representation when he did not challenge the racial composition of the jury venire. He argues that the State was required to take affirmative steps to assure that the jury reflected the racial composition of the county at large. The post-conviction court concluded that there was no evidence that there was a disparity in the number of African Americans in the jury pool compared to the community. The post-conviction court also found that the evidence at the post-conviction hearing had established that there was no systematic exclusion of any racial group because jurors were called through an automated process using driver's license and state-issued identification numbers. Accordingly, the court found neither deficiency nor prejudice.

The United States Supreme Court has held that the Sixth Amendment requires that the jury be drawn from a "fair cross section of the community." *Taylor v. Louisiana*, 419 U.S. 522, 527-28 (1975). However, "defendants are not entitled to a jury of any particular composition because the fair cross-section requirement does not impose a requirement that the jury actually chosen mirror the community or reflect the various distinctive groups in the population." *State v. Hester*, 324 S.W.3d 1, 39 (Tenn. 2010). In order to establish a prima facie case that the right to trial by jury was violated because the jury did not represent a fair cross-section of the community, the Petitioner must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Id.* (quoting *Duren v. Missouri,* 439 U.S. 357, 364 (1979)). A showing of purposeful discrimination is not required. *Id.* While the Petitioner has alleged the exclusion of a distinctive group based on race, *see Lockhart v. McCree*, 476 U.S. 162, 175 (1986), he has not alleged any sort of systematic exclusion, *see Hester*, 324 S.W.3d at 39. Instead, the proof at the post-conviction hearing showed that any disparity was the result of random chance. The post-conviction court also found that the Petitioner did not establish that there was a disparity in the number of African Americans in the panel compared to the number of African Americans in the community; in fact, although the Petitioner and his counsel testified regarding how many African Americans were on the panel, no proof

was introduced regarding what percentage of the community was African American.[3] *See State v. Stephens*, 264 S.W.3d 719, 733 (Tenn. Crim. App. 2007) ("No proof was offered regarding the population figures of Fentress County or the residency breakdown of the prospective jurors.") *abrogated on other grounds as stated in State v. Randall T. Beaty*, No. M2014-00130-CCA-R3-CD, 2016 WL 3752968, at *20 (Tenn. Crim. App. July 8, 2016), *perm. app. granted* (Tenn. Oct. 19, 2016).

The Petitioner candidly acknowledges that he can show no prejudice and that he cannot assert that the jury composition was the result of improper procedures, purposeful discrimination, or fraud. However, he urges us to hold that the venire that is called must mirror the racial composition of the community and that counsel was deficient for failing to object to any disparity. The Petitioner cites no legal authority for this proposition, and we can find none. Because the Petitioner has not demonstrated that his trial counsel performed deficiently in failing to challenge the venire and because he acknowledges that he cannot demonstrate prejudice, we affirm the post-conviction court's denial of relief.

## CONCLUSION

We affirm the judgments of the post-conviction court and remand for the post-conviction court's consideration of the surviving merged firearms conviction.

_____
JOHN EVERETT WILLIAMS, JUDGE

---

[3] The petition posits that 16% of the county was African American, but the report of the trial judge filed in the direct appeal, of which we take judicial notice, documented that less than 10% of the county was African American.